**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

ROBERT L. F[1].,

      Plaintiff,

                                Case No. 2:21-cv-3981
v.                            Judge Algenon L. Marbley
                                Magistrate Judge Stephanie K. Bowman

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

## I.    Summary of the Administrative Record

### A. *First Administrative Decision*

On February 3, 2015, Plaintiff protectively filed applications for period of disability, DIB, and SSI, alleging disability beginning October 12, 2002. (Tr. at 69.) Those applications were denied initially on June 8, 2015, and upon reconsideration on October 2, 2015. (*Id.*)

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

Thereafter, Plaintiff filed a written request for a hearing on November 30, 2015. (*Id.*) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative video hearing on October 27, 2017. (*Id.*)  On April 26, 2018, administrative law judge Christopher S. Tindale ("ALJ Tindale") issued a decision finding that Plaintiff had not been disabled within the meaning of the Social Security Act from February 3, 2015 through the date of the decision. (Tr. at 82.) The Appeals Council denied Plaintiff's request for review, and he filed a case before this Court.  *See, Robert F. v. Comm'r of Soc. Sec.*, Case No. 2:19-cv-454 (S.D. Ohio). This Court affirmed the administrative decision. *See Id.* at Docs. 12, 15, 16.

At step one of the sequential evaluation process,[2] ALJ Tindale found that Plaintiff has not engaged in substantial gainful activity since October 12, 2002, the alleged onset date. (Tr. at 72.)  ALJ Tindale found that Plaintiff has the severe impairments of disorders of the spine, degenerative joint disease; obesity, anxiety disorder, and a mood disorder. (*Id.*).  ALJ Tindale further found that Plaintiff does not have an impairment or combination

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or
    equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments,
    20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant
    perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional
    capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

of impairments that meets or medically equals the severity of one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).

Before proceeding to Step Four, ALJ Tindale set forth Plaintiff's residual functional

capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that the
> [Plaintiff] has the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to
> occasional push/pull with his lower left extremity. He is able to climb ramps
> and stairs occasionally, but never climb ladders, ropes, or scaffolds. He can
> frequently balance, stoop, kneel, crouch, but only occasionally crawl. He
> should avoid all exposure to dangerous hazards such as unprotected
> heights. He is limited to simple, routine tasks in a work environment free of
> fast production rate or pace work. He can have no contact with the public,
> occasional contact with supervisors, and only occasional and superficial
> contact with co-workers, with superficial contact defined as no tandem
> tasks. He is limited to only occasional changes in the work setting and only
> occasional decision making required.

(Tr. at 75.)

At step four of the sequential process, ALJ Tindale determined that Plaintiff is unable

to perform his past relevant work as a boilermaker.  (Tr. at 80.)  Relying on the VE's

testimony, the ALJ concluded at Step 5 that Plaintiff can perform other jobs that exist in

significant numbers in the national economy.  (Tr. at 81-82.)  ALJ Tindale therefore

concluded that Plaintiff was not disabled under the Social Security Act at any time since

February 3, 2015.  (Tr. at 82.)

**B. Second Administrative Decision (December 17, 2020)**

In January 2019, Plaintiff protectively filed his current applications for DIB and SSI,

alleging that he has been disabled since October 12, 2002, due to left eye vision

impairment; various musculoskeletal impairments including a herniated disc in his lumbar spine at L4/5 and S1, left wrist, and left knee; and mental impairments of depression and anxiety.  (Tr. at 267-79, 302.)[3]  Plaintiff's current applications were denied, initially in June 2019 and then upon reconsideration in September 2019.  (Tr. at 100-83.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (Tr. at 216-18.)  Plaintiff, who was represented by counsel, appeared and testified at a telephonic administrative hearing held on October 20, 2020.  (Tr. at 36-65.)  A vocational expert also appeared and testified.  (*Id.*)  Administrative Law Judge Karen Sayon ("ALJ Sayon") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on December 17, 2020.  (Tr. at 13-31.)

Based upon the record and testimony presented at the hearing, ALJ Sayon noted that while there is a prior ruling in this case, there is new and material evidence for the unadjudicated period and therefore the prior findings are not binding. (Tr. at 19.)  At step one, ALJ Sayon then found that Plaintiff had not engaged in substantially gainful activity since January 14, 2019, the application date.  (*Id.*)  ALJ Sayon also found that Plaintiff had the severe impairments of degenerative joint disease, left knee; obesity; degenerative disc disease, lumbar spine; sacroillitis; de Quervain's tenosynovitis; scaphoid non-union advanced collapse of left wrist; left eye impairment. (*Id.*)  She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one

---

[3] At this hearing, Plaintiff amended his alleged onset date to April 27, 2018

4

of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20.)

Before proceeding to step four, ALJ Sayon set forth Plaintiff's RFC as follows:

After careful consideration of the entire record, [ALJ Sayon] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations: up to four hours of standing and/or walking during a workday and the rest of the workday sitting; frequent but not constant handling, fingering, and pushing and pulling of arm controls with the non-dominant left upper extremity; no climbing ladders, ropes, or scaffolding; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no exposure to hazards (defined as commercial driving, work at unprotected heights, and operating dangerous machinery like a forklift). Because of monocular vision, he has limited depth perception and thus should avoid work at unprotected heights.

(Tr. at 21.)

At step four of the sequential process, ALJ Sayon determined that Plaintiff has no past relevant work.[4] (Tr. at 24.) Relying on the VE's testimony, ALJ Sayon concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (Tr. at 25-26.) ALJ Sayon therefore concluded that Plaintiff is not disabled under the Social Security Act. (Tr. at 26.)

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (Tr. at 1-7.) On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) violating Acquiescence Ruling (AR) 98-4(6) and *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), by not

---

[4] Plaintiff testified that he had not worked for approximately 17 years prior to the administrative hearing. *See* Tr. at 46-47

adopting the prior ALJ's finding that Plaintiff's mental impairments were severe and limited him to a range of simple work; (2) improperly rejecting the opinions of the state agency psychologists; (3) improperly classifying Plaintiff's mental impairments as non-severe; and (4) Plaintiff argues that the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.[5]

## II. Analysis

### A. Judicial Standard of Review

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive..."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

---

[5] Plaintiff's first and third assignments of error raise similar issues and will be considered together.

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**B.    The ALJ's Decision is supported by Substantial Evidence**

*1. Acquiescence Ruling 98-4(6) and Step-Two Finding*

For his first assignment of error, Plaintiff discusses his previous application for benefits. Plaintiff cites to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); *Dennard v. Sec'y of H.H.S.,* 907 F.2d 598 (6th Cir. 1990), and Acquiescence Rulings and AR 98-4(6), to argue that ALJ Sayon failed to treat ALJ Tindale's prior decision as a legitimate consideration in finding his mental impairments were not severe. (Doc. 11 at PAGEID ## 984-87.)

The Commissioner counters that the ALJ's decision to take a fresh look at the evidence is in line with the Sixth Circuit's decision in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). (Doc. 14).

As a preliminary matter, as both parties are well aware, the United States Court of Appeals for the Sixth Circuit previously has held that principles of res judicata apply to both claimants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841–42 (6th Cir. 1997). The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that [Plaintiff] retained the RFC to perform sedentary work because evidence did not indicate that [Plaintiff]'s condition had improved. *Id.* at 843. Following *Drummond*, the Social Security Administration issued Acquiescence Ruling 98-4(6), which provides, in pertinent part, as follows:

> **[W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision** by an ALJ or the Appeals Council on the prior claim in determining whether [Plaintiff] is disabled with respect to the unadjudicated period **unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding**.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998) (emphasis added); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless [Plaintiff] presents new and material evidence that there has been either a change in the law or a change in [Plaintiff]'s condition.").

Thereafter, the Sixth Circuit clarified its decision in *Drummond*. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). Specifically, in *Earley* the Sixth Circuit explained that principles of "consistency between proceedings and finality with respect to resolved applications" protected by *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. The Court went on to specifically reject the Social Security Administration's argument that "[i]n reviewing a second application by the same individual, . . . the administrative law judge should completely ignore earlier findings and applications" because "[f]resh review is not blind review." *Id.* at 934. In short, the Sixth Circuit found that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" and that a "ALJ should have another opportunity to review the application under the correct standard." *Id.* at 933–34.

Here, as noted by the Commissioner, instead of merely adopting ALJ Tindale's prior step-two and RFC findings without analysis, ALJ Sayon "carefully considered and discussed in detail the treatment notes, opinion evidence, and Plaintiff's testimony from the period subsequent to the prior decision." *See Harris*, 2021 WL 3615721, at *5. Moreover, ALJ Sayon expressly noted that (1) Plaintiff had not received mental health treatment after ALJ Tindale's prior decision (Tr. 19); (2) Dr. Griffiths' May 2019 examination report and the balance of the record did not support the "moderate and marked limitations assessed by

the [State agency] consultants" (Tr. 19-20; see Tr. 586-92); (3) Plaintiff repeatedly denied mental symptoms, generally behaved appropriately, and was "pleasant" and "joking" during medical visits (Tr. 20) (citing Tr. 457, 460, 464, 468, 472, 475, 599, 606); and (4) he did not allege any mental limitations at his October 2020 hearing before the ALJ, focusing instead on his physical symptoms (Tr. 20; see Tr. 46-58).  In light of this evidence, the ALJ properly determined that Plaintiff's mental impairments were not severe.

Furthermore, as the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted).

Here, Plaintiff has not established reversible error because the ALJ did not "screen out" his claim at step two. Rather, she found that Plaintiff had severe impairments at step

two and proceeded to the remaining steps of the sequential evaluation process, and explained her reasons for finding that Plaintiff did not have severe mental impairments.

Moreover, as noted by the Commissioner, the record before the ALJ did not support more than mild limitations in any area of mental functioning. (Tr. 20). And while ALJ Sayon did not include any mental limitations in her RFC assessment, her step five finding effectively restricted Plaintiff to unskilled jobs, which by definition involve only simple tasks requiring little or no judgment. (Tr. 25-26). See 20 C.F.R. § 416.968(a); see also *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) (equating unskilled work with simple, repetitive, and routine tasks). Because Plaintiff has not produced competent evidence of mental limitations that are incompatible with unskilled work, remand is not warranted. See *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999) (noting Plaintiff's burden to show greater limitations).

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

### 2. Weight Assigned to the State Agency Psychologists

Plaintiff argues next that the ALJ failed to properly weigh the medical source opinions from the state agency reviewing psychologists, Irma Johnston, Psy.D. and Courtney Zeune, Psy.D. (Doc. No. 11 at PAGEID ## 987-89.). Plaintiff's contention is unavailing.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*. The governing regulations[6] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 416.913(a)(4).

Here, the ALJ summarized the relevant medical records concerning Plaintiff's mental impairments and found his mental impairments to be non-severe as follows:

> [Plaintiff] alleged mental limitations due to depression and anxiety but has had no ongoing mental health treatment. He was evaluated by a psychological consultative examiner, who diagnosed unspecified depression and anxiety disorders. Based on this examination, the DDS concluded that he had severe medically determinable mental impairments and significant mental limitations. There is no basis in the consultative examination report or in the balance of the record for the indicated moderate and marked limitations assessed by the DDS consultants. The records from one source, Dr. Krupadev, indicate that that [Plaintiff] has complained of anxiety and depression, but throughout the record [Plaintiff] has repeatedly denied any

---

[6] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017).

mental symptoms. In patient health questionnaires throughout the record, [Plaintiff] routinely denies any depression symptoms. The record documents no "marked" limitation in social functioning; [Plaintiff] behaves appropriately in a clinical setting, except being noted a few times to be upset when he is not prescribed narcotics. He is noted to be pleasant and joking in occupational therapy visits. He did not raise any mental symptom complaints or allege any mental limitations at the hearing. Given the absence of treatment, lack of evidence of significant limitation, and few allegations of ongoing limitations, I do not find the DDS opinions to be persuasive as to [Plaintiff]'s mental limitations. For the forgoing reasons I find that [Plaintiff] has no more than mild limitation in any of the four broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).

Because [Plaintiff]'s medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(Tr. at 19-20 (internal citations omitted).)

Plaintiff argues that ALJ should have credited Dr. Johnston's and Dr. Zeune's, paragraph-B and mental RFC findings arguing that she failed to properly apply the factors outlined in Dr. Johnston's and Dr. Zeune's assessments in accordance with 20 C.F.R. § 416.920c. Specifically, Plaintiff argues that the state agency consultants found that Plaintiff "suffered from severe depressive and anxiety related disorders", that they found him to be "moderately limited in his ability to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt and manage himself, while finding him markedly limited in his ability to interact with others." (Doc. 11 at 4). Additionally, Plaintiff argues that the "state agency psychologists opined that [Plaintiffs] was limited to understanding and recalling simple, routine tasks in a work environment free of fast production rate or pace work, limited to no contact with the public, occasional contact with

supervisors, and occasional and superficial contact with coworkers, with no tandem tasks, and limited to only occasional changes in the work setting and only occasional decision making required." (Id.).

Plaintiff argues that the ALJ erred by failing to consider the supportability factor.  The "supportability factor concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 416.927(c)(3) and (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 416.920c(c)(1) and (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post- March 27, 2017 regulations)).

Here, ALJ Sayon found the assessments unpersuasive because they were "inconsistent with the longitudinal record, which documents no mental health treatment and few complaints," including no allegations of mental limitations at the October 2020 hearing (Tr. 24). See 20 C.F.R. § 416.920c(c)(2) (identifying consistency as an important factor). Earlier in the decision, ALJ Sayon noted that there was "no basis in [Dr. Griffiths'] consultative examination report or in the balance of the record for the indicated moderate and marked limitations assessed by the [State agency] consultants" (Tr. 19-20). See 20 C.F.R. § 416.920c(c)(1) (identifying supportability as an important factor). ALJ Sayon observed that Plaintiff had not only denied mental symptoms, but was also described as "pleasant" and "joking," with appropriate behavior except on a few occasions where he was

14

"upset when he is not prescribed narcotics" (Tr. 20; see, e.g., Tr. 446, 457, 510). The ALJ further cited to additional record evidence that Plaintiff specifically denied psychiatric symptoms and had normal mental status examinations. (Tr. 19-20) (citing Tr. 457, 460, 464, 468, 472, 475, 599, 606).

In light of the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Johnston's and Dr. Zeune's assessments in accordance with Agency regulations and controlling law.

### 3. Constitutional Challenge

Plaintiff asserts that remand is required because a statute that provided tenure protection to the former Commissioner of Social Security Andrew Saul violated the separation of powers doctrine.  He contends, therefore, that the decision to deny him benefits was made by individuals who lacked a proper delegation of power to make a benefits determination. The Undersigned finds no merit to this Constitutional claim.

As a preliminary matter, Plaintiff's claim, in the manner he has raised it here, is procedurally improper. *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683, at *6 (S.D. Ohio Dec. 21, 2021); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-CV-726, 2021 WL 5917130, at *7 (S.D. Ohio Dec. 14, 2021). This is so because Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

*v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Id*.

Here, the United States Supreme Court case upon which Plaintiff bases his Constitutional claim was decided on June 20, 2020. Plaintiff, however, gave no notice, let alone fair notice, of this claim in his complaint filed on July 20, 2021. (Doc. No. 1.) *Butcher,* 2021 WL 6033683, at *6 (citing *John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same)). For this reason, Plaintiff failed to comply with Rule 8.

Beyond this procedural deficiency, Plaintiff's Constitutional claim fails on a substantive basis as well. Plaintiff, relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), contends that former-Commissioner Andrew Saul's appointment violated the principle of separation of powers because 42 U.S.C. § 902(a)(3) provides for a six-year term and makes the Commissioner removable only upon a finding of neglect of duty or malfeasance in office. (Doc. No. 11 at 13.)  Accordingly, Plaintiff argues that the Commissioner had no authority to carry out any functions of his office and, by extension, the ALJ had no authority to adjudicate Plaintiff's applications, necessitating a remand.

In response, the Commissioner concedes that § 902(a)(3) violates the principle of separation of powers.  "The parties agree that 42 U.S.C. § 902(a)(3) violates the separation

of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause."). (Doc. 14 at 18). The parties' agreement on this issue, however, is not dispositive.

Plaintiff asserts that because the removal provision is unconstitutional, any delegations of power by former Commissioner Saul, including delegations of authority to ALJs or the Appeals Council who determined his benefits claims, were invalid. The Commissioner counters, however, that the ALJ who determined Plaintiff's claim on December 17, 2020, held office on that date because of a ratification of delegated authority in July 2018, by former Acting Commissioner Nancy Berryhill, not because of a delegation of authority from former Commissioner Saul. (Doc. No. 14 at 20.) As the Commissioner correctly notes, an Acting Commissioner is not subject to § 902(a)(3)'s removal provision thereby making that provision's constitutionality, or lack thereof, irrelevant. *Butcher*, 2021 WL 6033683, at *6 (citing *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761, 1781 (2021) (because the FHFA removal restrictions only applied to the Director, "any constitutional defect in the provisions restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" from actions of the Acting Director who enjoyed no such removal protections); *Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Director Berryhill who, as Acting Director, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No.

1:20-cv-00331-KDB, 2021 WL 5023141, * 3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.")).

First, even accepting, as the Commissioner agrees, that the removal provision in § 902(a)(3) is unconstitutional, it would not have deprived former Commissioner Saul of the ability to delegate power to others to decide Plaintiff's benefit claim because of the doctrine of severability. *Butcher,* 2021 WL 6033683, at *7. As the Supreme Court noted in *Seila Law*, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" 140 S.Ct. 2208 (quoting *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900)). Indeed, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 561 U.S. 477, 508 (2010)). For that reason, in *Seila Law*, the Supreme Court found that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the unconstitutional removal provision was stricken. 140 S.Ct. at 2209–10, 2245. The same is true here. If the removal provision in § 902(a)(3) is stricken, the Social Security Administration would remain fully functional. *Butcher,* 2021 WL 6033683, at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (finding that plaintiff's

separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional it was severable from the remainder of the statutes governing the Social Security Administration); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same)).

Additionally, even assuming the unconstitutionality of the removal provision in § 902(a)(3), that would not have automatically rendered former Commissioner Saul's appointment invalid. For this reason, it would not have automatically invalidated his actions, including delegating authority to make benefits determinations or ratifying such delegations. *Butcher*, 2021 WL 6033683, at *7. In *Collins v. Yellin*, 141 S.Ct. 141 S. Ct. 1761 (2021), decided after *Seila Law*, the Supreme Court considered a statute similar to § 902(a)(3) governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff must demonstrate "compensable harm" flowing from the unconstitutional removal clause. *Collins, 141* S.Ct.. at 1788–89 (remanding

for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, as the Commissioner contends, Plaintiff has made no showing of compensable harm. In fact, as courts considering this precise argument have begun to conclude, it is unlikely that he could. *See Butcher,* 2021 WL 6033683, at *8; *Crawford,* 2021 WL 5917130, at *8 (reaching identical conclusion on similar facts). As recognized by Justice Kagan in *Collins*, the President's choice of SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Collins,* 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.... When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Nor is the Court persuaded by Plaintiff's argument that harm should be presumed under the circumstances here. Again, neither appointments nor actions taken by a properly appointed official are nullified by an unconstitutional removal provision. *Butcher,* 2021 WL 6033683, at *8.

For all these reasons, the undersigned finds that Plaintiff's separation of powers claim lacks merit.[7] Accordingly, the undersigned does not reach the Commissioner's

---

[7] Significantly, district courts in this Circuit, including, as noted, this one, have rejected the Constitutional claim raised by Plaintiff and consistently have concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See Butcher,* 2021 WL 6033683; *Crawford,* 2021 WL 5917130*; Miley v. Comm'r of Soc. Sec.,* No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi.,* No. 20-518-HRW, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021). Courts from other Circuits have held similarly. *See, e.g., Lisa Y. v. Comm'r of Soc. Sec.,* ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi,* No. 1:20-CV-00358-KDB, 2021 WL

alternative arguments including harmless error, *de facto* officer, the rule of necessity, and other prudential considerations.

### III.    Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED,** and that this case be **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned agrees with the reasoning set forth in these other cases and reaches the same result.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

ROBERT L. F,

       Plaintiff,

   v.

                              Case No. 2:21-cv-3981
                              Judge Algenon L. Marbley
                              Magistrate Judge Stephanie K. Bowman

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).